UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JONATHAN SANTIAGO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 13-cv-12172-IT |
| | * | |
| THOMAS LAFFERTY and CITY OF LOWELL, | * | |
| | * | |
| Defendants. | * | |

***************************************

| | | |
|---|---|---|
| NEL SOTHY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. 13-cv-12302-IT |
| v. | * | |
| | * | |
| THOMAS LAFFERTY and CITY OF LOWELL, | * | |
| | * | |
| Defendants. | * | |

***************************************

| | | |
|---|---|---|
| TITUS KURIA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 13-cv-12303-IT |
| | * | |
| THOMAS LAFFERTY and CITY OF LOWELL, | * | |
| | * | |
| Defendants. | * | |

## ORDER

February 19, 2015

TALWANI, D.J.

These three cases, which have been consolidated for purposes of discovery, see Electronic Order [#32], involve allegations that the Lowell Police Department, including

Defendant Thomas Lafferty, used confidential informants to plant evidence on Plaintiffs.

Currently at issue is a motion for a protective order by non-parties, the Middlesex District

Attorney's Office and the Essex District Attorney's Office (collectively, the "DA's Offices").[1]

I.  Background

In 2013, the Middlesex DA's Office learned of the Lowell Police Department's allegedly improper use of confidential informants and requested that the Essex DA's Office investigate those allegations. See Mem. Law Supp. Mot. Protective Order, 2 [#59] [hereinafter DA's Offices' Mem.]. The First Assistant District Attorney for Essex, John Dawley, and a captain in the Lowell Police Department, Thomas Kennedy, conducted the investigation. See id. at 2-3.

On December 20, 2013, Plaintiff Jonathan Santiago sent subpoenas to each of the DA's Offices requesting documents related to Dawley and Kennedy's investigation. See id. at 3. On January 3, 2014, the Middlesex DA's Office responded with a letter objecting to the subpoena served upon it by Plaintiff Santiago. See Aff. Ryan E. Ferch, Ex. 1 [#59-2] [hereinafter Ferch Aff.]. In its letter, the Middlesex DA's Office objected to each of Plaintiff's document requests, using the following language or some variation of the following language:

> [M]uch of the information concerns the Lowell Police Department and is thus discoverable from it in this civil proceeding, in which the City of Lowell is named as a defendant. The DA's Office suggests that the Plaintiff exhaust other sources of discovery utilizing the Federal Rules of Civil Procedure before seeking the files of the DA's Office, which exercise likely would make the Plaintiff's request to the DA's Office superfluous. Accordingly, the DA's Office objects to this Request on the grounds that it seeks documents that are already in Plaintiff's possession or which can be obtained from some other source that is more convenient, less burdensome, or less expensive.

---

[1] The DA's Offices styled their motion as a motion to intervene for the limited purpose of a protective order, but this court treats the motion simply as a motion for a protective order. See Fed. R. Civ. P. 24 (defining intervention of right and permissive intervention); Fed. R. Civ. P. 26(c)(1) (allowing "any person from whom discovery is sought" to move for a protective order).

2

E.g., id. at Ex. 1, 1.

The Middlesex DA's Office's letter also objected to each request on the grounds that it was "overly broad, unduly burdensome, duplicative, vague, ambiguous, and does not contain any reasonable time limitations . . . and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." Id. at Ex. 1, 3. The letter objected further to each request on the ground that "it seeks confidential and privileged information," including information protected by the attorney work-product doctrine, the federal law enforcement investigatory privilege, the deliberative process privilege, and the privilege for communications made to secure the enforcement of law. E.g., id. at Ex. 1, 2. The letter also objected to each request "to the extent that it potentially requests matters that occurred before the grand jury," and finally on the grounds that each request sought information that the Middlesex DA's office was statutorily prohibited from providing. See id.

The penultimate paragraph of the letter stated that nothing therein should be "construed as a waiver of any rights, claims, . . . [or] privileges held by the DA's Office." E.g., id. at Ex. 1, 9. Despite making claims of privilege, the letter did not describe the nature of the withheld documents. Instead, nothing in the objection letter suggested that the Middlesex DA's Office had reviewed its files or was setting forth anything other than boilerplate objections. See, e.g., id. at Ex. 1, 8 ("the DA's Office is continuing to review its files to identify . . . non-privileged documents.").

The Middlesex DA's Office copied Defendant City of Lowell (the "City") on its objection letter to Plaintiff Santiago. See id. at Ex. 1, 9. No other steps were taken to communicate with the City about the documents over which the Middlesex DA's Office wished to assert a privilege. Plaintiffs in these combined cases subsequently sought discovery from the

City, and ultimately Plaintiff Santiago filed a motion to compel the City to produce the requested documents. See Pl.'s Mot. Compel Produc. Docs. Def. City Lowell [#45]. The City began producing documents on May 22, 2014, including a few of the documents at issue here. See Joint Statement Regarding Pl.'s Mot. Compel, 2 [#54] [hereinafter Joint Statement]; Pl.s' Opp'n Middlesex & Essex DA's Mot. Intervene 10 n.15 [#64] [hereinafter Pl.s' Opp'n]. On June 16, 2014, the court ordered the City to supplement its responses to Plaintiff Santiago's requests for production and, as to each request to which the City was objecting, to describe the documents being withheld with greater particularity. See Order [#55]. Thereafter, the City produced most of the documents now at issue. See Pl.s' Opp'n at 10.

On July 2, 2014—more than six months after receiving the subpoena and after the City had produced many of the documents presently at issue—the Essex DA's Office sent Plaintiff Santiago an objection letter substantially similar to that sent by the Middlesex DA's Office, with a copy to the City. See Ferch Aff. at Ex. 2. The letter noted that "the docket indicates that discovery between the Plaintiff is still ongoing as the court entered an order regarding preliminary discovery on June 16, 2014." Id. at Ex. 2, 1.

On July 8, 2014, counsel for the DA's Offices learned that the City may have produced some documents which the DA's Offices contend are privileged. See id. ¶ 5, Ex. 3. Counsel for the DA's Offices requested and received from the City copies of the correspondence to or from John T. Dawley, the First Assistant District Attorney for the Essex DA's Office, which had been produced by the City. See id. ¶¶ 7-8. Subsequently, the DA's Offices also sought and received copies of the communications to or from the Middlesex DA's Office that had been produced by the City. See id. ¶ 9.

4

On July 17, 2014, the DA's Offices jointly filed the instant motion, in which they claim that they hold privileges over certain of the disclosed documents and that the City's production was unauthorized. See DA's Offices' Mem. at 23.[2]

II. Discussion

The DA's Offices' motion asserts various qualified privileges over the documents in question. See id. at 8-23. However, because the facts of this case present a question of waiver, the court begins first by assuming that the documents at issue may have been subject to a qualified privilege and addressing whether the claimed privileges have been waived.

In their moving papers, the DA's Offices argue that disclosure by the City cannot constitute waiver because the City was not the sole privilege holder. See id. at 23. The court begins, however, not with the City's actions, but with the steps the DA's Offices took (and did not take) to protect against disclosure of documents in the City's possession.

A. *The DA's Offices Failed to Maintain Their Privilege Claims*

"[T]he party who invokes the privilege bears the burden of establishing that it applies to the communications at issue *and that it has not been waived*." In re Keeper (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003) (emphasis added). Waiver is a remedy not to be used lightly; it is generally reserved for "'cases where the offending party committed unjustified delay in responding to discovery.'" See Stamps v. Town of Framingham, Civ. No. 12-11908-FDS, 2014 WL 1598109, at *5 (D. Mass. Apr. 16, 2014) (quoting Charles A. Wright & Arthur R. Miller, 8 Fed. Prac. & Proc. § 1016.1 (3d ed.)); see also In re Dep't of Justice Subpoenas to ABC, 263 F.R.D. 66, 71 (D. Mass. 2009) ("Waiver is appropriate where the

---
[2] Although the motion was filed only in Santiago v. Lafferty, Civ. No. 13-cv-12172, the DA's Offices have requested that any ruling on this motion also apply to the cases consolidated for purposes of discovery. DA's Offices' Mem. at 2 n.1.

responding party's conduct evinces a deliberate pattern of delay and is egregious." (internal quotation marks and citation omitted)).

Where the record reveals a pattern of delay, disregard of court orders, or failure to meet procedural obligations, however, a finding of waiver may be justified. See, e.g., In re Grand Jury Subpoena, 274 F.3d 563, 576 (1st Cir. 2001) ("A party that fails to submit a privilege log is deemed to waive the underlying privilege claim."); Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 12 (1st Cir. 1991) ("If the responding party fails to make a timely objection . . . he may be held to have waived any or all of his objections."); In re Grand Jury Subpoena (Zerendow), 925 F. Supp. 849, 855 (D. Mass. 1995) ("A waiver may result from the failure to take reasonable steps to insure confidentiality); Moon v. SCP Pool Corp., 232 F.R.D. 633, 636 (C.D. Cal. 2005) ("A nonparty's failure to timely make objections to a Rule 45 subpoena duces tecum generally requires the court to find that any objections have been waived." (citing In re DG Acquisition Corp., 151 F.3d 75, 81 (2d Cir. 1998))). Accordingly, to determine whether a finding of waiver is appropriate, the court considers whether the DA's Offices' actions and inaction amount to a pattern of delay or disregard sufficient to constitute waiver.

*1. Failure to Adequately Ensure Confidentiality of Correspondence*

The e-mails at issue in this motion are all communications involving one or more individuals in the Lowell Police Department. Emails sent to and from the Middlesex DA's Office included no directive to maintain the e-mail or attachments as confidential, and most of the emails were distributed more widely than just to Captain Kennedy, who was conducting the investigation. See, e.g., City Supp. Prod. 324 [#64-15] (e-mail sent by Middlesex DA's Office to Lieutenant Barry Golner and Captain Kennedy, then forwarded to Defendant Lafferty); id. 325 (e-mail from Captain Kennedy to Middlesex DA's Office and Lieutenant Golner, then forwarded

6

to Defendant Lafferty); id. 336-37 (e-mail from Middlesex DA's Office forwarded to Defendant Lafferty and Detective David Lavoie); id. 460, 462, 467 (e-mails between Middlesex DA's Office and Lieutenant Golner and Sergeant Jonathan Noone); id. 645 (e-mail from Middlesex DA's Office to Lieutenant Golner and Captain Kennedy); id. 666 (e-mail from Middlesex DA's Office to Lieutenant Golner and Captain Kennedy, then forwarded to Defendant Lafferty with response from Defendant Lafferty to Captain Kennedy). But see id. 618 (e-mail from Middlesex DA's Office to Captain Kennedy).

In contrast, the e-mails to and from the Essex DA's Office did include a confidentiality warning and generally were not directed to members of the Lowell Police Department other than Captain Kennedy. See, e.g., id. 579 (e-mail from Essex DA's Office to Captain Kennedy, with copy to Middlesex DA's Office); id. 584 (e-mail exchange between Essex DA's Office and Captain Kennedy); id. 602 (e-mail from Essex DA's Office to Captain Kennedy and Middlesex DA's Office); id. 608, 610 (e-mail exchanges between Essex DA's Office, Middlesex DA's Office, and Captain Kennedy); id. 611, 615, 617, 641 (e-mails from Essex DA's Office to Captain Kennedy). But see id. 607 (e-mail from Captain Kennedy to Essex DA's Office with copy to Lieutenant James Hodgdon); id. 609 (e-mail from Captain Kennedy, then forwarded to Lieutenant Hodgdon with a response from Lieutenant Hodgdon to Captain Kennedy).

### 2. *Failure to Investigate Responsive Documents*

When Plaintiff Santiago served the DA's Offices with subpoenas in December 2013, they were put on notice that he sought documents over which the DA's Offices might claim a privilege. Had the DA's Offices conducted a search for responsive documents at the time they received the subpoenas, they presumably would have found their copies of the previously

7

described e-mail correspondence with members of the Lowell Police Department. No such search appears to have occurred.

### 3. *Lack of Compliance with Federal Rule of Civil Procedure 45*

Federal Rule of Civil Procedure 45(d)(2)(B) requires that objections to a subpoena "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Federal Rule of Civil Procedure 45(e)(2)(A)(ii) requires further that where a privilege or protection is claimed, a person withholding subpoenaed information must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."

The Essex DA's Office failed to timely serve written objections, instead waiting six months before responding to the subpoena. Moreover, even when the Essex DA's Office responded, it did not provide the required information regarding the withheld documents to allow Plaintiffs to assess its claims of privilege. The Middlesex DA's Office timely responded with objections to each request. However, despite claiming various privileges and protections, it similarly did not provide any information about the withheld documents that would have allowed Plaintiffs to assess the merits of its claims.

### 4. *Failure to Seek Order Quashing or Modifying Subpoena*

Federal Rule of Civil Procedure 45(d)(2)(B)(3) offers persons served with a subpoena additional protection against certain disclosures, mandating that "[o]n timely motion, the court for the district where compliance is required *must quash or modify* a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." (emphasis added). Neither of the DA's Offices filed a timely motion to quash or modify the subpoena.

### 5. *Failure to Directly Communicate with the City*

Rather than alert the City that the DA's Offices sought to protect against disclosure of any privileged or protected documents held by it, the Middlesex DA's Office advised Plaintiff (with a copy to the City) that "much of the information concerns the Lowell Police Department and *is thus discoverable from it in this civil proceeding*, in which the City of Lowell is named as a defendant." E.g., Ferch Aff. at Ex. 1, 1 (emphasis added). It suggested further that Plaintiff "exhaust other sources of discovery." Id.

When, six months later, the Essex DA's Office similarly advised Plaintiff to seek information from the City, it specifically noted that "the docket indicates that discovery . . . is still ongoing," and referenced the court's order of June 16, 2014. See id. at Ex. 2, 1. The court order referenced by the Essex DA's Office concerned Plaintiff Santiago's motion to compel production of documents from the City and required the City to indicate, with greater particularity, the nature of any documents the City sought to withhold. Despite being on notice that the City was in the process of reviewing documents within its possession to comply with the court's order, the Essex DA's Office still took no steps to advise the City regarding any purported privilege or protection over documents held by the City.

At a motion hearing before this court, the DA's Offices argued that they expected that, by copying the City on their objection letters to Plaintiffs, the City would communicate with the DA's Offices before producing any potentially privileged information to Plaintiffs. This argument is wholly without merit as to the Essex DA's Office, which did not send its letter for six months, at which time production had already begun. But even as to the Middlesex DA's Office, there is no explanation as to why the impetus to commence communication regarding documents it believed to be privileged rested on the City.

9

Moreover, the court sees nothing in the objection letters to reasonably put the City on notice of the DA's Offices' expectation that they be contacted before the City answered Plaintiffs' discovery requests. The letters are not addressed to the City and, insofar as they reference the City, it is only to assert that Plaintiffs should request and receive the sought-after documents from the City. The DA's Offices' failure to include the required detail regarding the subpoenaed documents they sought to withhold left not only the Plaintiffs but also the City without any reasonable basis on which to judge whether the DA's Offices intended to claim a privilege with regard to any particular document in the City's possession.

The DA's Offices argue that they could not have taken more proactive steps because they "could not be expected to know what documents were actually in the City's possession, . . . what document requests the Plaintiffs had sent to the City or what objections the City had made." Supplemental Mem. Supp. Mot. Protective Order, 3 [#82]. The DA's Offices could have remedied any lack of knowledge by simply asking the City which documents were still in its possession. They also could have searched their own records when they received the subpoena and likely would have found most of the correspondence at issue now.[3]

The DA's Offices argue finally that, despite their lack of communication with the City, at the time they made their objections "numerous facts put the City on notice that documents from the DA's Office were possibly privileged." See id. at 3. Namely, they assert that: (1) "[a]ll of the . . . e-mails involved ADA Dawley and Captain Kennedy," (2) the City knew that Captain Kennedy "was part of the prosecution team," and (3) each e-mail from ADA Dawley included a warning that its contents may be confidential. Id. at 3-4.

---

[3]  The only likely exception would be e-mails forwarding attorney e-mails from their original recipient within the Lowell Police Department to other members of the department.

As set forth above, however, the e-mails to and from the Middlesex DA's Office generally did not involve ADA Dawley, did not include a confidentiality warning, and were not limited to Captain Kennedy. Rather, these emails were generally shared with other members of the Lowell Police Department, including Lieutenant Golner, Detective Lavoie, Sergeant Noone, and Defendant Lafferty. Although the e-mails from the Essex DA's Office did include a confidentiality warning, the Essex DA's Office failed to make timely objections or send any timely notice to the City, and therefore cannot now blame the City for disclosing the documents in question.

### 6. *The Totality of These Circumstances Favors a Finding of Waiver*

In sum, the record in this case illustrates that the DA's Offices failed to take consistent or adequate steps to protect their claims of privilege or protection over the documents produced by the City. From the time the DA's Offices received the subpoenas in December 2013, they had ample opportunity to properly object to the subpoenas, to seek protection from the court, to provide a privilege log,[4] and to communicate with the City before disclosure occurred. See Joint Statement at 2 (noting that the City began producing documents on May 22, 2014). In light of the DA's Offices failure to avail themselves of these opportunities, and failure to otherwise take necessary steps to maintain the confidentiality of privileged documents, the court finds the DA's Offices have waived their claims of privilege over documents produced by the City.

### B. *Application of the Test for Inadvertent Disclosures Reaches the Same Result*

The DA's Offices urge application of the test used for inadvertent disclosures, which some courts have also applied to cases of allegedly unauthorized third-party disclosures. E.g., In

---

[4] Although the privilege log would not have been addressed to the City, it might have, at least, provided notice of which specific documents the DA's Offices believes were privileged, thus giving the City an opportunity to determine whether these documents were in their possession.

re Grand Jury Subpoena Dated March 20, 2013, No. 13-MC-189 (Patt I), 2014 WL 2998527, at *12 (S.D.N.Y. July 2, 2014) (applying the test for inadvertent disclosures to an unauthorized disclosure); United States v. Hatfield, No. 06-CR-0550 (JS), 2010 WL 183522, at *9 (E.D.N.Y. Jan. 8, 2010) (same). This analytical framework leads to the same conclusion.[5]

In considering whether an inadvertent disclosure constitutes waiver, courts examine: "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice." See Amgen Inc. v. Hoechst Marion Roussel, Inc., 190 F.R.D. 287, 292 (D. Mass. 2000).

### 1. *Reasonableness of Precautions*

As detailed above, despite expressly directing Plaintiff to seek discovery of subpoenaed materials from the City, the DA's Offices took no proactive efforts to communicate with the City regarding their claims of privilege or to determine which documents the City still retained. Merely copying the City on their objection letters was not an adequate or reasonable method of ensuring continued confidentiality of privileged documents. See, e.g., In re Grand Jury Subpoena Dated March 20, 2013, 2014 WL 2998527, at *13 (finding that a failure to "take effective steps" to protect confidential files that were known to be in possession of an external investigator favored waiver); Amgen, 190 F.R.D. at 292 (recognizing that a failure to take "easily-accomplished additional precautions" favored a finding of waiver); In re Grand Jury Subpoena (Zerendow), 925 F. Supp. at 855 ("A waiver may result from the failure to take reasonable steps to insure confidentiality."). This factor favors a finding of waiver.

---

[5] While the court finds the use of this analytical framework helpful in this case, it reserves ruling on whether all claims of unauthorized disclosure should be assessed under this test.

### 2. *Timeliness of Post-Disclosure Actions*

After Plaintiffs' counsel informed the DA's Offices of the City's disclosure, the DA's Offices acted promptly, filing the instant motion within approximately one week. See Fleet Nat'l Bank v. Tonneson & Co., 150 F.R.D. 10, 16 n.11 (D. Mass. 1993) (finding no waiver where counsel promptly recognized mistake). However, focusing on the date of disclosure improperly shields from scrutiny the DA's Offices' failure to take prompt action after disclosure became foreseeable (i.e., after the DA's Offices expressly directed Plaintiffs to seek subpoenaed materials from the City). Cf. Hatfield, 2010 WL 183522, at *9 (measuring the "relevant timeframe" not from the date the inadvertent disclosure was discovered, but "from when the party 'should have learned' of the improper disclosures'" (quoting Clarke v. J.P. Morgan Chase & Co., 08-CV-2400, 2009 WL 970940, at *6 (S.D.N.Y. 2009))); Ciba-Geigy Corp. v. Sandoz Ltd., 916 F. Supp. 404, 414 (D.N.J. 1995) (finding that counsel took prompt efforts to rectify inadvertent disclosure, but that the effect of this promptness on the court's waiver analysis was mitigated where prior disclosures had made it foreseeable that, without changes to screening processes, such a mistake would be made again).

Accordingly, the court finds that this factor is largely neutral in regards to a finding of waiver, but that the DA's Offices' post-disclosure efforts are insufficient to make up for their failure to communicate with the City or provide a privilege log after sending their objection letters to Plaintiffs.

### 3. *Scope of Production*

In a typical inadvertent disclosure case, the court may assess whether the size of the wrongful disclosure, as compared against the size of production, suggests that the disclosure was a reasonable mistake. Compare Turner v. Brave River Solutions, Inc., No. Civ. 02-148-D, 2003

WL 21418540, at *2 (D.N.H. June 18, 2003) ("The production of 9 pages among 2,093 . . . is a deminimus [sic] oversight."), and Amgen, 190 F.R.D. at 293 ("An occasional inadvertently-produced document would be more comprehensible under the circumstances of such a large production."), with Ciba-Geigy, 916 F. Supp. at 414 (D.N.J. 1995) (finding disclosure of six copies of a document and twenty-three additional pages to favor waiver where production was 681 pages), and Amgen, 190 F.R.D. at 293 (favoring waiver where 200 privileged documents, comprising 3821 pages, were produced in a production of 70,000 total pages).

Here, however, the overall size of the City's production is inapposite to the court's inquiry. A more appropriate comparator might be how many documents the DA's Offices gave the City, and what portion of those documents they believed to be privileged. The DA's Offices knew that they had left in the possession of the City a number of putatively privileged documents, but they failed to take adequate steps to protect *any* of these documents from disclosure. See In re Grand Jury Subpoena Dated March 20, 2013, 2014 WL 2998527, at *13 (favoring waiver where an entire investigatory file was presumptively privileged, but steps were not taken to protect it from unauthorized disclosure by a third party). Although the City may only have disclosed a relatively small number of allegedly privileged documents, the limited scope of this disclosure was not a result of any action on the part of the DA's Offices, which undertook no efforts to communicate their claims of privilege over any of the documents held by the City. Accordingly, this factor favors a finding of waiver.

    4.    *Extent of Production*

The City has already disclosed the documents in question and they have been reviewed by Plaintiffs, who informed the DA's Offices of the disclosure. Accordingly, this factor favors waiver. See Amgen, 190 F.R.D. at 293 (finding extent of the disclosure favored waiver where

14

multiple personnel for the opposing party had reviewed the documents); Ciby-Geigy, 916 F. Supp. at 414 ("[T]he extent of disclosure . . . also weighs in favor of a finding of waiving. . . . The disclosure . . . was complete."); cf. Fleet Nat'l Bank, 150 F.R.D. at 16 n.11 ("[C]ounsel realized its mistake . . . before a copy of Volume III was actually delivered.").

     5.    *Fairness*

The DA's Offices argue that fairness disfavors a finding of waiver because: (1) they took reasonable pre-disclosure precautions, and (2) the subject of the instant litigation is not the DA's Offices' investigation but the actions of a City police officer. See DA's Offices' Mem. at 27.

As to the first argument, as described above the DA's Offices' actions fell short of being reasonable efforts to prevent disclosure. As to the second argument, although the DA's Offices' investigation is not the subject of this litigation, the facts underlying that investigation are directly relevant to Plaintiffs' claims. Moreover, any concern regarding potential harm arising from public disclosure of the produced documents is not currently before the court, as these documents remain under seal. See Electronic Order [#63]. Accordingly, the court holds that a finding of waiver as it relates to the documents produced by the City is not unfair in this circumstance.[6]

III.    Conclusion

For the foregoing reasons, the DA's Offices' Motion to Intervene for the Limited Purpose of Requesting a Protective Order [#58] is DENIED.

IT IS SO ORDERED.

February 19, 2015                                    /s/ Indira Talwani
                                                                   United States District Judge

---

[6] The DA's Offices do not address the question of whether a finding of waiver should apply only to the already-produced documents, or should constitute a subject-matter waiver. Accordingly, the court does not reach this issue in resolving the instant motion.

15